SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
HAROLD J. MILSTEIN, Cal. Bar No. 145074
hmilstein@sheppardmullin.com
JAMES M. CHADWICK, Cal. Bar No. 157114
jchadwick@sheppardmullin.com
CHELSEAA BUSH, Cal. Bar No. 228771
cbush@sheppardmullin.com
379 Lytton Avenue
Palo Alto, California  94301
Telephone:    650-815-2600
Facsimile:    650-815-2601

Attorneys for Plaintiff
ALIGN TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ALIGN TECHNOLOGY, INC., a Delaware corporation,<br><br>            Plaintiff,<br><br>       v.<br><br>MARKET AMERICA, INC., a North Carolina corporation, and LOREN RIDINGER, an individual,<br><br>            Defendants. | Case No. 5:15-cv-5125<br><br>**COMPLAINT FOR UNFAIR COMPETITION AND FALSE ENDORSEMENT; TRADEMARK INFRINGEMENT; AND TRADEMARK DILUTION**<br><br>**DEMAND FOR JURY TRIAL** |

SMRH:473430831.4

-1-

Plaintiff Align Technology, Inc. ("Align") alleges the following:

## NATURE OF THE CASE

1. This is an action seeking damages and injunctive relief for (1) unfair competition and false endorsement (15 U.S.C. §§ 1114(1), 1125(a)); (2) trademark infringement (15 U.S.C. §§ 1114(1), 1125(a)); and (3) trademark dilution (15 U.S.C. § 1125(c)).

## THE PARTIES

2. Align is a Delaware corporation with a place of business at 2560 Orchard Parkway, San Jose, California 95131. Align is the owner of the famous trademark INVISALIGN®, which it uses in connection with its well-known dental and orthodontic goods and services.

3. Market America, Inc. ("Market America") is a North Carolina corporation with a place of business at 1302 Pleasant Ridge Road, Greensboro, North Carolina 27409. Market America is a product brokerage and internet marketing company, utilizing the internet and one-to-one marketing to distribute a variety of products across numerous markets. Ms. Loren Ridinger ("Ridinger") is the Senior Vice President of Market America and the Creative Director and Founder of Market America's cosmetics division, "Motives by Loren Ridinger." Upon information and belief, Ridinger resides in Miami Beach, Florida and New York City, New York. Market America and Ridinger are collectively referred to as "Defendants." Under Motives by Loren Ridinger, Defendants are using the mark INVISI-LINE in connection with a skin cream to reduce the appearance of wrinkles.

## JURISDICTION AND VENUE

4. The causes of action in the Complaint arise under the Lanham Act, 15 U.S.C. § 1051, *et seq*. This Court has original subject matter jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

5. This Court has personal jurisdiction over Defendants in this action and venue is proper in this judicial district because: (a) Defendants are actively conducting business in California and have distributors, business centers, and scheduled training events in California; (b) Defendants have purposefully availed themselves of the privilege of conducting business in California; (c) the harm caused to Plaintiff by the acts and omissions of Defendants was targeted

1  by Defendants at Plaintiff and designed to impact Plaintiff, which has its principal place of
2  business located in this judicial district; and (d) a substantial part of the acts or omissions giving
3  rise to the asserted claims occurred or had effects in this judicial district.  This Court also has
4  personal jurisdiction over Ridinger because as the Senior Vice President of Market America and as
5  the Creative Director and Founder of Market America's cosmetics division, "Motives by Loren
6  Ridinger, she is responsible for initiating and directing Defendants' illegal and infringing activities
7  described herein.

8        6.      Assignment to the San Jose Division of the Court is proper pursuant to Civil Local
9  Rule 3-2(c) because a substantial part of the events or omissions giving rise to the claims alleged
10 occurred or had effects in Santa Clara County, California.

11 **FACTUAL BACKGROUND**
12 **Align's Business And Marks**
13       7.      Align is a pioneer in the field of orthodontics and digital dental scanning and
14 simulation software.  Align invented, developed, patented, and introduced the first mass-produced
15 customized clear teeth aligner therapy under the trademark INVISALIGN®.  In fact, Align
16 singlehandedly revolutionized the manner in which patients straighten their teeth and started the
17 now billion dollar industry for clear aligners as an alternative to wire braces.  The INVISALIGN
18 system has grown into the world's leading orthodontic product, consisting of a combination of
19 proprietary 3D modeling software, cutting edge custom manufacturing technology, and clear,
20 removable dental appliances that are used to straighten teeth for personal appearance improvement
21 and to treat other side effects of malocclusions, such as breathing problems.
22       8.      Align was founded in 1997 and began using the INVISALIGN trademark in
23 interstate commerce in connection with clear orthodontic appliances no later than  September
24 1999.  Align has continuously used the INVISALIGN trademark in interstate commerce in
25 connection with its products and services since that time.
26       9.      Align owns the following United States trademark registrations for INVISALIGN:
27
28

| Mark | Registration No. | Registration Date: |
|---|---|---|
| INVISALIGN | 2,409,473* | November 28, 2000 |
| INVISALIGN | 3,060,471* | February 21, 2006 |
| INVISALIGN | 3,191,195* | January 2, 2007 |
| INVISALIGN | 3,418,121* | April 29, 2008 |
| INVISALIGN | 4,025,403 | September 13, 2011 |
| INVISALIGN TEEN | 3,627,894 | May 26, 2009 |
| INVISALIGN TEEN & Design | 3,661,970 | July 28, 2009 |
| INVISALIGN ASSIST | 3,734,867 | January 5, 2010 |
| INVISALIGN & Design | 3,911,988 | January 25, 2011 |

True and correct copies of the trademark registration certificates for the above listed trademarks are attached as **Exhibit A** to this Complaint.

10. Align's registrations listed above are valid, subsisting, and in full force and effect. Several are also incontestable (as indicated with an asterisk * alongside the Registration Number in Paragraph 9) pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065, and thus serve as conclusive evidence of the validity of Align's INVISALIGN marks, pursuant to 15 U.S.C. § 1115(b).

11. The INVISALIGN trademark is fanciful and therefore inherently distinctive.

12. The INVISALIGN trademark is also famous and widely recognized by the general consuming public of the United States. Millions of consumers in the general public and their children seek orthodontic treatment each year and INVISALIGN has been a leading treatment option since its inception over fifteen years ago. The INVISALIGN trademark became famous long before Defendants adopted the mark INVISI-LINE.

13. Align works with doctors, dentists, and orthodontists in every region of the United States and in over 80 countries around the world to provide its INVISALIGN products and services. Since 1998, approximately 80% of the orthodontists in the United States have been trained in the use of the INVISALIGN system. This means that dentist and orthodontist offices all

over the country have been promoting INVISALIGN to their patients and have had INVISALIGN brochures and other marketing collateral featured in their offices.

14. By the end of 2001, Align had already manufactured approximately 1 million clear aligners and its popularity skyrocketed from there. By October 2007, Align produced its 30 millionth clear aligner, and by April 2009, Align had treated its one millionth customer. Currently, Align has trained more than 96,000 dentists and orthodontists in its INVISALIGN technology, started over 3 million patients in its INVISALIGN treatment, and manufactured more than 177 million unique INVISALIGN aligners. In sum, clear aligners have become a mainstream dental and orthodontic treatment option and INVISALIGN is the market leader in the field.

15. Because it is so effective and in such high demand, the INVISALIGN system has now been integrated into the standard curriculum in over 50 university orthodontic and dental programs throughout the United States, including leading universities such as the University of Michigan, University of California Los Angeles, University of North Carolina, New York University School of Dentistry, University of the Pacific, UCSF School of Dentistry, University of Chicago, and the University of Connecticut.

16. Align has made hundreds of millions of dollars in revenue each year for the last several years from its products and services offered under the INVISALIGN trademark. In fact, by 2009, when Defendants first started using the INVISI-LINE mark, Align had already made billions of dollars from sales of its INVISALIGN system. The remarkable level of sales and popularity of INVISALIGN have turned it into a household name.

17. The INVISALIGN trademark has also become famous by virtue of Align's extensive advertising of the trademark over the last decade. In that time, Align has spent an enormous amount in advertising INVISALIGN throughout every state and region of the United States and throughout the world. In fact, by 2002, Align had spent over $800 million dollars on advertising INVISALIGN.

18. INVISALIGN has also been featured repeatedly in major national news and lifestyle publications, including Elle, Cosmo, InStyle Magazine, Marie Claire, The New York Times, USA Today, Lucky Magazine, New Beauty Magazine, US Magazine, and Bridal Guide,

just to name a few.  INVISALIGN has also been featured in national television programs, such as the CBS morning show *The Doctors, The Tyra Banks Show,* and *The Balancing Act* on the Lifetime channel.  In addition, INVISALIGN has been the official sponsor of several television and concert events, including Radio Disney's Next Big Thing's national talent search and concert tour, and the Teen Choice Awards that aired on Fox Networks, reaching millions of viewers all over the country.  INVISALIGN has several celebrity ambassadors such as teen star Coco Jones, Zendaya from *Dancing with the Stars*, German soccer champion Matthias Sammer, and Australian professional snowboarder Torah Bright.  INVISALIGN has also been highlighted in the media as the teeth-straightening choice of numerous celebrities that include Khloe Kardashian, Justin Bieber, Tom Cruise, Eva Longoria, Katherine Heigl, Gisele Bundchen, and Zac Efron.

19.     INVISALIGN is also heavily advertised through social media.  Align has INVISALIGN YouTube Channels that have thousands of followers and a number of the INVISALIGN videos on YouTube have received hundreds of thousands to over a million views each.  In addition, Align has maintained a Facebook page featuring INVISALIGN that has garnered more than one hundred thousand "likes."

20.     Align also provides extensive information on its products and services for dentists and consumers at <invisalign.com>, including how the INVISALIGN systems works, success stories, reasons for choosing INVISALIGN, and how to find an INVISALIGN provider.  Align registered <invisalign.com> in 1999, long before Defendants adopted INVISI-LINE.  Between 2013 and 2014 alone, over 4.5 million people visited the <invisalign.com> website.  Over 400,000 people search for an INVISALIGN provider each year on the <invisalign.com> website.

21.     In summary, Align has made billions of dollars of sales under the INVISALIGN trademark.  Millions of consumers have engaged with or been exposed to the INVISALIGN trademark through print, broadcast and social media, through the <invisalign.com> website, and through the promotional materials located in thousands of dentist and orthodontist offices throughout the country.  Align has spent hundreds of millions of dollars in advertising INVISALIGN in virtually every available medium and in every region of the country.  As a result, INVISALIGN is famous and widely recognized by the general consuming public of the United

States as identifying Align's products and services. This fame was established long before Defendants began the wrongful activity alleged herein.

**<u>Defendants' Unlawful Conduct</u>**

22.  Defendants offer cosmetics, skincare products, and other personal appearance improvement products through their Motives division ("Motives"). The website for Motives can be found at www.motivescosmetics.com. Ridinger is the Creative Director and Founder of Motives.

23.  Upon information and belief, Defendants' Motives has been offering a face cream for reducing fine lines and wrinkles under the name INVISI-LINE since 2009. Defendants' INVISI-LINE product is sold on the www.motivescosmetics.com website and through Motives' distributors. Attached as Exhibit B is a true and correct copy of Defendants' Motives website showing the INVISI-LINE product.

24.  Defendants has never been authorized by Align to use INVISALIGN, INVISI-LINE, or any variation thereof, and has never been granted authority to assert or suggest any affiliation with or endorsement by Align.

25.  Defendants' mark INVISI-LINE is confusingly similar to Align's INVISALIGN trademark. The marks are phonetically identical, visually similar, and create a highly similar commercial impression.

26.  Align's INVISALIGN system is often used by women for personal appearance improvement. The INVISI-LINE product is used for the same purpose and will be targeted to the same consumers. In fact, a number of orthodontists that specialize in the INVISALIGN system describe their offices as "spas" and provide anti-aging cosmetic products and services, such as Botox®, Dermal Fillers, and teeth whitening, alongside INVISALIGN products and services. A consumer can have an appointment for an INVISALIGN consultation in the same office where she is purchasing an anti-aging product or service.

27.  Anti-aging wrinkle cream is often targeted at wrinkles around the mouth. Indeed, there are special names for the wrinkles around the mouth, including "smile lines," "laugh lines," or "nasolabial folds." Align's business is centered around improving the appearance of the mouth.

A consumer exposed to Defendants' INVISI-LINE product could and likely would believe that Align is complementing its current offerings for the mouth by expanding into wrinkle creams to fight smile lines.

28. In addition, INVISALIGN and INVISI-LINE are advertised in the very same publications. For example, according to Defendants' promotional videos, the INVISI-LINE product is featured in Elle and Cosmo magazines. Align has placed ads for INVISALIGN in several editions of these same magazines. Also, both Defendants' Motive cosmetic products and Align's INVISALIGN products and services are reviewed or discussed by bloggers and/or vloggers specializing on the subject of personal appearance improvements. Attached as Exhibit C are true and correct copies of examples of third party websites featuring INVISALIGN and Motives Cosmetics on the same webpage.

29. Consumers often encounter INVISALIGN alongside anti-aging products. Align's millions of customers associate INVISALIGN exclusively with its products and services, and hence are likely to believe that other personal appearance improvement products offered under a phonetically identical mark to INVISALIGN are produced by Align or by an affiliate of Align, or are endorsed, approved or sponsored by Align.

30. Defendants' use of INVISI-LINE is also likely to cause dilution by blurring and dilution by tarnishment of the famous INVISALIGN trademark. The similarity between Defendants' INVISI-LINE mark and Align's famous INVISALIGN trademark will impair the distinctiveness of Align's famous INVISALIGN trademark, reduce the ability of Align's famous INVISALIGN trademark to uniquely identify Align's products and services, and reduce the selling power of Align's famous INVISALIGN trademark.

31. In addition, the association between Align's famous INVISALIGN trademark and Defendants' INVISI-LINE mark, arising from the strong similarity between the marks, will harm the reputation of Align's famous INVISALIGN trademark. For example, if Defendants' cream is ineffective at reducing the appearance of wrinkles or results in a consumer breaking out in a rash, such experiences, or reports of such experiences, are likely to reflect negatively on Align in the

minds of consumers who associate Align with Defendants based on the similarity between Defendants' INVISI-LINE trademark and Align's famous INVISALIGN trademark.

32. On July 20, 2015, upon learning of Defendants' use of INVISI-LINE, Align wrote to Market America alerting it to Align's famous INVISALIGN trademark and trademark rights, and explaining that use of INVISI-LINE infringes and dilutes Align's famous INVISALIGN trademark and trademark rights. Align requested that Market America adopt a different mark and offered to work with it to amicably resolve the situation. Align was amenable to Market America retaining either the INVISI- prefix or the –LINE suffix in INVISI-LINE but asked that Market America combine either the prefix or the suffix with a distinguishing term so that the mark as a whole did not resemble INVISALIGN. Market America refused to make any changes to the INVISI-LINE mark.

33. Accordingly, Defendants willfully and intentionally continue to use INVISI-LINE, with knowledge that they are causing or are likely to be causing confusion by misleading and deceiving the public. Defendants also willfully and intentionally continue to use INVISI-LINE with knowledge that they will be causing or will likely to be causing dilution of Align's famous INVISALIGN trademark.

## FIRST CAUSE OF ACTION

**(Unfair Competition and False Endorsement, 15 U.S.C. §§ 1114(1), 1125(a))**

34. Align incorporates herein the allegations in paragraphs 1 through 33, as set forth above.

35. Align is the sole owner of the registered INVISALIGN trademark, as set forth above.

36. Align has never licensed or otherwise authorized Defendants to use INVISI-LINE. Align has never licensed or otherwise authorized Defendants to assert or imply any endorsement by or affiliation with Align.

37. Defendants have used INVISI-LINE in commerce without Align's consent. This use is likely to cause confusion with respect to the source and origin of Defendants' products, and

is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Align with Defendants and/or the sale of Defendants' products.

38. The INVISI-LINE trademark is a colorable imitation of the INVISALIGN trademark, and is used in connection with products that are related to those offered by Align and in markets that are the same as markets served by Align. Such use is likely to cause confusion, to cause mistake, or to deceive.

39. Defendants have knowingly and intentionally used the trademark INVISI-LINE, with the intent of causing confusion and mistake and of misleading and deceiving the public generally and Align's customers in particular into generally believing that Defendants' products are associated with or endorsed by Align.

40. Defendants' acts constitute unfair competition and false endorsement in violation of 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a).

41. As a direct and proximate result of Defendants' unlawful acts as set forth above and the false impressions created by Defendants' actions, Align has suffered and will continue to suffer injury to its business and goodwill.

42. Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Align is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein. Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

43. Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

44. Align has no adequate remedy at law to compel Defendants to cease their wrongful acts. Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the infringing use of INVISI-LINE, Align will continue to suffer irreparable harm.

45. Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of unfair competition and false endorsement in violation of 15 U.S.C. § 1125.

## SECOND CAUSE OF ACTION

**(Trademark Infringement, 15 U.S.C. 1114 et. seq.)**

46. Align incorporates herein the allegations in paragraphs 1 through 45, as set forth above.

47. Align is the sole owner of the registered INVISALIGN trademark, as set forth above.

48. Align has never licensed or otherwise authorized Defendants to use INVISI-LINE. Align has never licensed or otherwise authorized Defendants to assert or imply any endorsement by or affiliation with Align.

49. Defendants have used in commerce INVISI-LINE as a trademark, without Align's consent. This use is likely to cause confusion with respect to the source and origin of Defendants' products and is likely to cause confusion or mistake and to deceive purchasers as to the affiliation, connection, or association of Align with Defendants and/or the sale of Defendants' products.

50. The INVISI-LINE trademark is a colorable imitation of the INVISALIGN trademark, and is used in connection with products that are related to those offered by Align and in markets that are the same as markets served by Align. Such use is likely to cause confusion, to cause mistake, or to deceive.

51. Defendants have knowingly and intentionally adopted and used the trademark INVISI-LINE, with the intent of causing confusion and mistake and of misleading and deceiving the public generally and Align's customers in particular into generally believing that Defendants' products are associated with or endorsed by Align.

52. Defendants' acts constitute infringement of the INVISALIGN trademark in violation of 15 U.S.C. § 1114.

53. As a direct and proximate result of Defendants' unlawful acts as set forth above, Align has suffered and will continue to suffer injury to its business and goodwill.

54. Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Align is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein. Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

55. Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

56. Align has no adequate remedy at law to compel Defendants to cease its wrongful acts. Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the infringing use of INVISI-LINE, Align will continue to suffer irreparable harm.

57. Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of infringement in violation of 15 U.S.C. § 1125.

### THIRD CAUSE OF ACTION

**(Trademark Dilution, 15 U.S.C.§ 1125(c))**

58. Align incorporates herein the allegations in paragraphs 1 through 57, as set forth above.

59. The INVISALIGN trademark is famous and distinctive, and is entitled to protection against dilution.

60. Defendants commenced use of INVISI-LINE as a trademark long after the INVISALIGN trademark became famous.

61. Defendants' use of INVISI-LINE as a trademark is likely to dilute the distinctive quality of the INVISALIGN trademark in violation of 15 U.S.C. § 1125(c).

62. As a direct and proximate result of Defendants' unlawful acts as set forth above, Align has suffered and will continue to suffer injury to its business and goodwill.

63. Align is entitled to recover from Defendants the damages that it has sustained and will sustain as a result of Defendants' wrongful conduct as alleged herein. Align is further entitled to recover from Defendants the gains, profits, and advantages that Defendants have obtained as a result of the wrongful conduct alleged herein. Align is at present unable to ascertain the full extent of its damages, or the gains, profits, and advantages that Defendants have obtained by reason of the wrongful conduct described herein, but those amounts will be proven at trial.

64. Align is further entitled to an award of enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

65. Align has no adequate remedy at law to compel Defendants to cease their wrongful acts. Unless Defendants are permanently enjoined from committing these unlawful acts as set forth above, including the dilutive use of INVISI-LINE, Align will continue to suffer irreparable harm.

66. Align is entitled to an injunction pursuant to 15 U.S.C. § 1116 restraining Defendants and their officers, agents, servants and employees, and all persons in active concert or participation with them from engaging in any further such acts of dilution in violation of 15 U.S.C. § 1125.

## **PRAYER FOR RELIEF**

Align requests the following relief as a result of the unlawful acts of Defendants described herein:

A. A judgment in favor of Align on all of the claims for relief pleaded herein.

B. That Defendants, and all persons and entities acting in concert with them, be preliminarily and thereafter permanently enjoined and restrained, pursuant to the Court's inherent equitable powers and pursuant to 15 U.S.C. § 1116, from using in any manner in connection with their businesses, websites, domain names, or the goods offered or sold by them, or in connection with any advertising or promotions for such businesses or goods, the INVISI-LINE trademark or any other trademark that is similar to the INVISALIGN trademark;

1     C.     An award to Align of compensatory, consequential, and statutory damages flowing from Defendants' wrongful acts, as described herein.

    D.     An order requiring Defendants to disgorge any and all revenues, gains, profits, and advantages obtained and to be obtained by Defendants as a result of Defendants' unlawful acts as described herein.

    E.     An order finding that this case is exceptional, awarding enhanced damages and attorney's fees pursuant to 15 U.S.C. §1117(a).

    F.     An order that Align may recover its costs from Defendants.

    G.     An order awarding Align both prejudgment and postjudgment interest.

    H.     An order for such other and further relief as the Court may deem just and appropriate.

Dated: November 9, 2015          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                  By     */s/ James M. Chadwick*
                                         HAROLD J. MILSTEIN
                                         JAMES M. CHADWICK
                                         CHELSEAA BUSH
                                         Attorneys for Plaintiff
                                         ALIGN TECHNOLOGY, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff Align Technology, Inc. hereby demands a jury trial on all issues triable as of right to a jury.  Fed. R. Civ. P. 38(b).

Dated:  November 9, 2015        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                By     /s/ James M. Chadwick
                                       HAROLD J. MILSTEIN
                                       JAMES M. CHADWICK
                                       CHELSEAA BUSH
                                       Attorneys for Plaintiff
                                       ALIGN TECHNOLOGY, INC.

SMRH:473430831.4                          -15-